UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| EUSEBIUS JACKSON<br><br>on behalf of himself and all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>PAPA JOHN'S USA, INC., *et al.*<br><br>Defendants. | : | CASE NO. 1:08-CV-2791<br><br>OPINION & ORDER<br>[Resolving Doc. No. 10-1] |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Jackson alleges that Defendants have improperly denied their Assistant Managers overtime pay and moves this Court for conditional certification of a nationwide collective action under the Fair Labor Standards Act ("FLSA") § 16(b), 29 U.S.C. § 216(b). [Doc. 10-1.] The Defendants Papa John's USA, Inc. and Papa John's International oppose, saying that the Plaintiff has not made the "modest factual showing," *Comer v. Wal-Mart Stores*, 454 F.3d 544, 548 (6th Cir. 2006), required for conditional certification. [Doc. 23-1].

The Plaintiff complains that Assistant Managers do substantially the same work as hourly employees but the Defendants classify their Assistant Managers as exempt from the overtime pay requirements of FLSA §§ 6 and 7, 29 U.S.C. §§ 206, 207. [Doc. 1-1 at 4 ("The primary duty of Plaintiff and other similarly-situated salaried Assistant Managers was to make pizza alongside the

hourly, non-exempt employees.”).]

In resolving this motion, this Court must decide whether the Plaintiff is “similarly situated” to putative opt-in Plaintiffs when, (1) Defendants characterize all Assistant Managers as exempt from the FLSA overtime requirements, and (2) the Plaintiff submit evidence from other employees showing Assistant Managers did not perform significant management duties and support ~~ed~~ this claim with Defendants’ management training documents.

For the reasons stated below, this Court holds that the Plaintiff has demonstrated the modest factual showing required for conditional certification of a collective action. Accordingly, the Court **GRANTS** the Plaintiff’s motion for conditional certification.

## I. Background

Plaintiff Eusebius Jackson filed this proposed collective action complaining that Defendants improperly failed to pay overtime allegedly required by the FLSA. [Doc. 1-1.] Plaintiff Jackson sued on behalf of himself and other similarly situated Papa John’s Assistant Managers to recover the overtime pay allegedly due under the FLSA.

The Plaintiff named both Papa John’s USA and Papa John’s International as Defendants in this case. The Plaintiff treats the two Defendants together, but each is distinct. Papa John’s USA is a subsidiary of Papa John’s International. [Doc. 23-2, Ex. 1 at 1.] Papa John’s USA owns and operates approximately 435 restaurants in approximately nine states.[1] The Defendants admit that Papa John’s USA “maintains certain companywide standards.” [Doc. 23-2, Ex. 1 at 2.]

Where Papa John’s USA primarily owns restaurants, Papa John’s International primarily

[1] Papa John's USA sold its Ohio restaurants around September 29, 2008, and no longer owns any restaurants in Ohio. [Doc. 23-1 at 2-3.] Plaintiff Jackson worked in the Ohio market.

franchises restaurants. [Doc. 23-1 at 3; Doc. 23-2, Ex. 1 at 2.] Papa John's International does, however, own and operate 65 restaurants in Lexington, Kentucky and Phoenix, Arizona markets.

From January 2002 until September 2008, Plaintiff Jackson worked as an Assistant Manager at several Papa John's USA restaurants in Northern Ohio. [Doc. 1-1 at 3.] He contends that, though his job title was Assistant Manager, his "primary duty" was to "make pizza alongside the hourly . . . employees." [Doc. 1-1 at 4.] He says that his job does not involve significant management. [Doc. 1-1 at 4-5.]

In moving the Court to conditionally certify a collective action, the Plaintiff submitted a declaration saying that he observed that other members of the class and him

> (a) were employed as Assistant Managers; (b) had the same job duties; (c) were paid a salary wage; (d) were classified by Papa John's as "exempt" employees; (e) regularly worked over 40 hours a week; and (f) have not been paid overtime compensation for the hours we work over 40 in a workweek.
>
> [and]
>
> (a) did not manage; (b) did not direct the work of other employees; (c) did not hire, fire, or promote employees; (d) did not perform work directly related to the management or general business operations; and (e) did not exercise discretion and independent judgment with respect to matters of significance.

[Doc. 10-3.] Two additional putative opt-in Plaintiffs who both worked in Papa John's USA restaurants in Northern Ohio submitted declarations of consent to opt-in with ~~the~~ identical allegations. [Doc. 3-2 at 2; Doc. 17-2 at 2.]

To support his motion for conditional certification, the Plaintiff directs this Court to a document from a Papa John's USA General Manager from Northern Ohio describing an Assistant Manager's duties. [Doc. 23-6, Ex. 4 at 5-7.] This General Manager said that the job-description document was a "true and accurate reflection of the actual job responsibilities and duties of Assistant

Managers *under [her] supervision*." [Doc. 23-6, Ex. 4 at 5-7 (emphasis added).] This job description says that an Assistant Manager will "[a]ssist the general manager in managing all functions of a Papa John's restaurant," and provides a long description of what that entails. [Doc. 23-6, Ex. 4 at 5.]

The Plaintiff says that this document "applies to all 1,000 of its Assistant managers at its 648 restaurants in 19 states, and outlines the various duties the Assistant Managers have in common." [Doc. 28-1 at 4-5.] The Plaintiff does not make clear how he connects this document to all 1,000 Assistant Managers based on the General Manager's description.

The Plaintiff also submitted documents from the Papa John's USA's management training program. [Doc. 10-1 at 7-9; Docs. 28-2 to 28-17.] The Defendants say that "[s]ome Assistant Managers received formal training through" the program, but do not say how many of them were formally trained. [Doc. 23-1 at 10.] The Defendants say that this is a Papa John's USA program, but the training documents are marked "Papa John's International." [*See*, *e.g.*, Doc. 28-3.] The Plaintiff argues that the job description and the training materials show that Assistant Managers around the country are "similarly situated," 29 U.S.C. § 216(b). [*See* Doc. 28-1.]

Based on the above-described evidence, the Plaintiff sought to conditionally certify a collective action class of:

> All former and current salaried Assistant Managers employed by Papa John's USA, Inc. and Papa John's International, Inc. at any time between November 26, 2005 and the present.

[Doc. 10-1 at 9.] The Plaintiff estimates that around 1,000 persons fit this definition.

Responding to Plaintiff's motion for conditional certification, the Defendant says that the Plaintiff "failed to identify a 'common policy of plan' issued by Defendants that violates the FLSA." [Doc. 23-1 at 2.] The Defendants submitted a Declaration from Defendant Papa John's USA's senior

vice president saying that "it is generally understood within each . . . restaurant that Assistant Managers perform managerial tasks ." [Doc. 23-2, Ex. 1 at 3.] Additionally, because of the discretion of General Managers to run their restaurants, "from restaurant to restaurant, from day to day, and even from hour to hour, [Defendants'] Assistant Managers may be required to perform a wide variety of managerial tasks." [Doc. 23-2, Ex. 1 at 3.]

## II. Analysis

To decide whether conditional certification is appropriate, this Court will first describe the Plaintiff's theory of liability under the FLSA and then describe the collective action generally.

### *II.A. The FLSA Minimum Wage and Maximum Hour Requirements*

Congress has established minimum wage and maximum hour requirements. *See* 29 U.S.C. §§ 206, 207. Congress has also exempted certain employees from the minimum wage and maximum hour requirements. 29 U.S.C. § 213(a)(1). Pertinent to this litigation, Congress has exempted those employees that are "bona fide executive" employees. Section 213(a)(1) defines an executive employee that works in a "retail or service establishment" as an employee that spends at least 60% of his time on "executive . . . activities" or "activities . . . directly or closely related to . . . executive . . . activities."[2] 29 U.S.C. § 213(a)(1). This statute further provides that the Secretary or labor may

---

[2] In full, this opaque statute says that the minimum wage and maximum hour requirements shall not apply to

> any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of Title 5, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per

(continued...)

provide regulations to further "define and delimit[]" this definition.[3/] *Id.* Whether the Plaintiff's allegations state a claim under the FLSA is a merits determination that is not appropriate at this stage of the litigation. Instead, the Plaintiff asks this Court to conditionally certify a collective action that he brings on behalf of himself and others similarly situated.

### *II.B. Certification of an FLSA Representative Action*

#### *II.B.1 Collective Actions Generally*

If an employer violates the FLSA, and no exemption applies,

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). A collective action furthers several important policy goals. First, the collective action "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Rouche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Second, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Id.*

As described in § 216(b), a plaintiff alleging an FLSA violation can bring a representative action for similarly situated persons if the plaintiff meets two requirements: "1) the plaintiffs must

---

[2/](...continued)
centum of his hours worked in the workweek are devoted to such activities).

29 U.S.C. §213.

[3/] The Secretary has promulgated regulations that further define the executive-employee exemption. *See* 29 CFR §§ 541.100 (general rule for executive employees), 541.102 (definition of management) , 541.700 (definition of primary duty), 541.106 (definition of concurrent duties), 541.703 (definition of directly and closely related).

actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 545 (6th Cir. 2006) (citations omitted). This FLSA representative action is called a collective action and is different from the Civil Rule 23 representative action: under Rule 23 a putative plaintiff has the opportunity to opt out oft he class, but under the FLSA a putative plaintiff must affirmatively opt in to the class. *Id.*

Because of this opt-in requirement, the Supreme Court has held that, to efficiently adjudicate an FLSA collective action, "district courts have discretion, in appropriate cases, to implement [FLSA § 16(b),] 29 U.S.C. § 216(b)[,] . . . by facilitating notice to potential plaintiffs." *Hoffmann-La Rouche*, 493 U.S. at 170.

In *Hoffman-La Rouche*, the Supreme Court also noted the "wisdom and necessity for early judicial intervention in the management of litigation." *Hoffman-La Rouche*, 493 U.S. at 171. When dealing with a collective action, a "trial court can better manage [the] action if it ascertains the contours of the action at the outset." *Id.* Additionally, "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Id.* at 172. But the Court in *Hoffman-La Rouche* also noted a "potential for misuse of the class device." *Id.* at 171.

*II.B.2 The Two-Stage Notification Process*

In response to the Supreme Court's holding in *Hoffman-La Rouche*, courts have developed a two-stage approach to collective actions. The Sixth Circuit, in *Comer v. Wal-Mart Stores*, 454 F.3d at 546-547, approved the two-stage process. The first stage is a notice stage and occurs at the beginning of discovery. Before conditional certification at the notice stage, a plaintiff must make a

"modest factual showing" and need "only that his position is similar, not identical, to the positions held by the putative class members." *Id.* (citations and internal quotations omitted). This standard is "fairly lenient." *Id.* at 547 (citations and internal quotations omitted). In approving the two-step process, the Sixth Circuit also quoted *Roebuck v. Hudson Valley Farms, I*nc., 239 F. Supp. 2d 234, 238 (N.DN.Y. 2002) (emphasis added), where the court held that a plaintiff must "make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were *victims of a common policy or plan that violated the law*."

While the required level of proof is minimal and lenient, this Court will exercise some caution because the Sixth Circuit has held "that a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable." *See id.* at 549; *see also Brooks v. A Rainaldi Plumbing, Inc.*, No. 6:06-cv-631-Orl-31DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006) ("While it is clear that, at this [notice] stage, Plaintiffs' burden is not heavy, *it is not invisible*.) (emphasis added). Certification at this first stage, however, is "by no means final." *Comer*, 454 F.3d at 546 (citation omitted).

"At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are in fact, similarly situated." *Id.* at 547.

Here, for the purposes of the notice stage, the Plaintiff has shown that (1) Assistant Managers have the same job descriptions, and that (2) the Defendants treat all Assistant Managers as exempt from the FLSA minimum wage and maximum hour requirements. This common practice does not, however, violate the FLSA, and Plaintiff Jackson does not allege that this practice violates the law. *See White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002). In *White*, the court held that a plaintiff "must make some rudimentary showing of commonality between the basis for his

claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Id.* "Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.*

Here, however, Plaintiff Jackson additionally alleges that Assistant Managers do not perform sufficient managerial functions to justify exempt treatment. Plaintiff Jackson's and the two putative opt-in Plaintiffs' consent declarations support this allegation. But these consent declarations only evidence a local violation. Three alleged violations in a localized area, without anything more, will not justify conditional certification of a national collective action.

The training manuals, however, that Plaintiff Jackson submitted do support his claim that the Defendants's FLSA violation is nationwide. As noted above, the Defendants admitted that the documents apply to Papa John's USA restaurants but the documents are marked "Papa John's International." The Management Training Program ensures that future Assistant Managers receive "the skills needed to be a successful Papa John's manager." [Doc. 28-3 at 1.] Some of these "needed" skills include, "Practice 'clean as you go[,] . . . Clean, sweep and mop lobby area[,] . . . Clean and restock restrooms[,] . . . Slap the dough to the appropriate size and shape[,] . . . Place topping on product according to standard." [Doc. 28-16 at 2, 7.] While several of the skills in the management training documents suggest management responsibility, the documents are sufficiently consistent with Plaintiff Jackson's allegation for conditional certification.

**III. Conclusion**

The certification ordered here is conditional, and this Court will reexamine this certification at the second stage. The Court will **GRANT** conditional certification of Plaintiff Jackson's proposed collective action:

All former and current salaried Assistant Managers employed by Papa John's USA, Inc. and Papa John's International, Inc. at any time between November 26, 2005 and the present.

The Court **ORDERS** Defendants to provide the Plaintiff the name, last known home address (including zip code), last known telephone number, and dates of employment of all individuals within the above-defined class. [*See* Doc. 10-5.] The Defendants are to provide this information to the Plaintiff within 15 days.

Additionally, the Court **ORDERS** that, within 15 days, the parties shall submit to the Court proposed language for notification and consent forms to be issued by the Court apprising potential plaintiffs of their rights under the FLSA to opt in as parties to this litigation. In drafting the proposed notification language, the parties should "be scrupulous to respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche*, 493 U.S. at 174.

IT IS SO ORDERED.

Dated: February 13, 2008

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE