UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
EUSEBIUS JACKSON :
:
on behalf of himself and all others : CASE NO. 1:08-CV-2791
similarly situated :
:
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 46-1; 52-1; 59-1]
PAPA JOHN'S USA, INC., *et al.* :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Jackson moves this Court to compel Defendants to produce the social security numbers of absent members of this conditionally-certified collective action to facilitate notice to previously unreachable individuals. [Docs. 46-1, 54-1.] Defendants object to the production of the social security numbers because of privacy concerns for those absent members. [Doc. 51-1 at 1.] In resolving this motion, this Court will balance the benefits of additional notice, *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-171 (1989), against the "highly personal and confidential nature of social security numbers and the harm that can flow from disclosure," *Gieseke v. First Horizon Home Loan Corp.*, No. 04-2511-CM-GLR, 2007 WL 445202 (D. Kan. Feb. 7, 2007).

In opposing Plaintiff's motion, Defendants have separately asked to supplement their response, [Doc. 52-1,] and to file a sur-reply instanter, [Doc. 59-1.] The Court **GRANTS** both

-1-

Case No. 1:08-cv-2791
Gwin, J.

motions. Because this Court holds that the privacy interests of the absent members outweigh the benefits of the notice, this Court **DENIES** Plaintiff's motion to compel production of the social security numbers.

## I. Background Facts and Procedure

On November 26, 2008, Plaintiff Jackson sued Defendants saying that Defendants improperly classified him as exempt from overtime pay requirements of the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206, 207. [Doc. 1-1.] Plaintiff Jackson worked as an Assistant Manager for Defendants and claims that his primary responsibility was to "make pizza" and not to manage. [Doc. 1-1 at 4.] Around one month after filing suit, Plaintiff Jackson moved this Court to conditionally certify a collective action under 29 U.S.C. § 216(b) consisting of other similarly-situated Assistant Managers working for Defendants. [Doc. 10-1.]

On February 13, 2009, this Court conditionally certified the Plaintiff's collective action and then approved notice to the putative class members. [Doc. 36.] To effectuate notice, this Court required Defendants to give Plaintiff the name, last known home address (including zip code), last known telephone number, and dates of employment for the members of the conditionally certified class. [Doc. 29 at 10.] This class included 1,841 individuals.

Plaintiff mailed notice of this collective action to all members. Of these 1,841 notices sent, Plaintiff has been completely unable to reach 161 (or all but around 9%) of the members. [Doc. 46-2, Ex. 1 at 1-2.][1/] Plaintiff says that the social security numbers will help to contact the previously

---

[1/] Of the notices that Plaintiff sent, 206 were returned as undeliverable. Of those 206, 37 had forwarding information. Of the remaining 169 individuals that did not have forwarding information, the Plaintiff was able to reach 8 additional members by phone. This leaves 161 absent members that Plaintiff was unable to reach in the initial notice, that Plaintiff has no forwarding information for, and that Plaintiff has been unable to reach by phone. [Doc. 46-2, Ex. 1 at 1-2.]

-2-

Case No. 1:08-cv-2791
Gwin, J.

unreachable class members because the numbers "will allow [him] to hire a firm to perform what is called an address trace."[2/] [Doc. 46-1 at 2.] Plaintiff has offered to sign a confidentiality agreement to protect the social security numbers and has also offered to have Defendants send the social security numbers directly to a third-party firm for the address trace so that Plaintiff will not have any access to the numbers. [Doc. 52-1 at 2.]

## II. Legal Standard

Without providing any citations, Plaintiff says that "[s]tandard operating procedure calls for the use of [social security numbers] to locate prospective plaintiffs and inform them of their right to participate in this lawsuit." [Doc. 46-1 at 7.] Courts, however, "have not uniformly required the production of social security numbers for putative FLSA collective action members." *Gieseke*, 2007 WL 445202 at *4. The parties each point to district court cases that support their positions: one where the court compelled production of the social security numbers, *Gieseke*, 2007 WL 445202 at *4, and one where the court did not, *Vennett v. American Intercontinental University Online*, No. 05 C 4889, 2006 WL 9080303 (N.D. Ill. April 5, 2006).

The parties nonetheless both direct this Court to a balancing test provided in the *Gieseke* case:

> In general, courts apply a balancing test weighing the plaintiffs' need for social security numbers to facilitate notification of the FLSA action against the privacy interests of the putative class members. This balancing test considers the highly personal and confidential nature of social security numbers and the harm that can flow from disclosures, then balances it against the plaintiff's need for the information to notify prospective class members.

2007 WL 445202 at *4 (the *"Gieseke* test"); [Doc. 51-1 at 4;] [Doc. 54-1 at 3.]

---

[2/] Accordingly to Plaintiff, "[a]n address trace is performed using a Lexis-Nexis credit-header search, and requires both the last known address and the individual's social security number." [Doc. 46-1 at 2.]

-3-

Case No. 1:08-cv-2791
Gwin, J.

The plaintiff-employee in *Gieseke* sought to compel the defendant-employer to produce social security numbers for those absent class members whose notices had been returned undeliverable. *Id.* The Court held that the plaintiff-employee had shown a need for the social security numbers because 13% (this percentage was "continu[ing] to increase") of the absent class members had not received the notice. *Id.* The court then reasoned that the privacy interests of absent class members would be "adequately addressed by requiring the production subject to parties' protective order limiting the disclosure and dissemination of confidential information." *Id.*

Under this *Gieseke* test, a court would not require the production of social security numbers unless a plaintiff had shown that the absent individuals could be reached by using less private contact information. *Cf. Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, *6 (N.D. Cal. Feb. 18, 2009); *Lee v. ABC Carpet & Home*, No. 00 Civ. 0984 (DAB), 2008 WL 2073932, *3 (S.D.N.Y. May 9, 2008) ("While [social security numbers] may make it easier for Plaintiff to contact potential class members, Plaintiff has not provided a convincing rational to explain why the production of such sensitive information is needed.").

This balancing test suggests that, as long as a named plaintiff needs the social security numbers for notification (i.e., cannot reach absent class members through less private contact information), a court should compel production of social security numbers when the parties have a confidentiality agreement. *Id.* Essentially, need plus protective order equals production.

By focusing on the named plaintiff's need, however, the *Gieseke* test overstates a plaintiff's entitlement to the social security numbers and fails to account for the interests served by a notice in an FLSA collective action. The request for the social security numbers of absent class members is not a normal discovery request. FED. R. CIV. P. 26(b) ("Parties may obtain discovery regarding

-4-

Case No. 1:08-cv-2791
Gwin, J.

any nonprivileged matter that is relevant to any party's *claim or defense*.") (emphasis added). The request here seeks to compel Defendants to produce private information of members of the general public, even though that information does not relate to any claim or defense of the current parties. *See* 29 U.S.C. § 216(b) (noting that no individual is a party to a collective action unless he or she affirmatively opts into the action); *see also Vennet*, 2006 WL 908030 at *3 ("[P]roviding sensitive personal data such as a social security number is not to be done lightly. Nor should people who appear to have no or little interest in joining the lawsuit be faced with the possibility of being contacted by telephone or having additional personal information released.").

Instead of focusing on the Plaintiff's need for the social security numbers, this Court will balance the costs and benefits associated compelled production. The Supreme Court has held that "[a] collective actions allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffman-La Roche*, 493 U.S. at 170. Notice serves these interests. *See id.* at 170-171.

In light of *Hoffman-La Roche*, and the privacy concerns identified above, this Court will examine several factors to decide whether to compel Defendants to produce the social security numbers: (1) the interest of opt-in members' in cost reductions to be achieved by additional notice; (2) the interest of the judicial system in dealing with the common questions of fact and law in a single action; (3) the interest of this Court and the current parties in avoiding undue delays; (4) the interest of previously unreachable class members in having the opportunity to participate in this litigation and reduce costs; and (5) the interests of previously unreachable class members in having their social security numbers kept private.

Case No. 1:08-cv-2791
Gwin, J.

### III. Application

Here, the Court holds that the costs associated with the compelled production of the social security numbers outweigh the benefits to be effectuated by the additional notice.

First, based on the parties' submissions, the evidence suggests that Plaintiff Jackson has been successful in reaching 1,680 of the 1,841 absent class members. This represents 91% of the absent class members.[3/] The interest of Plaintiff Jackson and other opt-in Plaintiffs in the pooling of resources accomplished by compelling production of social security numbers is minimal. Of the 1,680 absent class members that have received Plaintiff's mailed notice, around 150 have opted into this litigation. [Doc. 51-1 at 2.] This is an opt-in rate of around 9%. Assuming that this rate would continue for those individuals that have failed to receive any contact from Plaintiff (161 individuals), the production of the social security numbers would, assuming the social security numbers lead to an accurate address, yield an additional 14 or 15 opt-in Plaintiffs. Here, the additional benefit of spreading the litigation costs to 14 to 15 more individuals is small–opt-in Plaintiffs will already share litigation costs with at least 150 individuals. *See Gilbert v. Citigroup. Inc.*, No. 08-0385 SC., 2009 WL 424320 (N.D. Cal. Feb. 18, 2009) (denying plaintiff-employee's request for social security numbers but noting that plaintiff "may move to compel production of social security numbers if this contact information is not sufficient to provide notice to a *large percentage* of potential class members") (emphasis added).

---

[3/] Plaintiff Jackson also called the absent class members whose notice had not been returned as undeliverable but who had not yet opted into the collective action. [Doc. 54-1 at 2-3.] Plaintiff was unable to connect to 29% of these individuals that he called and suggests that this "raises a concern as to the effectiveness of the notice ordered by the Court in this case." [Doc. 54-1 at 3.] This Court finds this general challenge to the effectiveness of the mailed notice unpersuasive. *See Cook v. Providence Hosp.*, 820 F.2d 176, 179 n.3 (6th Cir. 1987) ("At common law, there is a presumption that a properly addressed, stamped, and mailed letter is received by the addressee."). Plaintiffs sent the notices through first class mail. [Doc. 46-1 at 4.] This failure to reach some absent class members by phone does not mean that the Plaintiff's notice failed to reach those class members.

Case No. 1:08-cv-2791
Gwin, J.

Second, this Court recognizes the interest of the judicial system in treating the common questions of fact and law in a single action. Because, however, certification is only conditional at this stage, there is no guarantee that this Court will adjudicate these issues in a single action even if it orders additional notice. Also, absent class members are not party to this suit and can choose to pursue their claims individually even if they do receive notice. So while treatment of this controversy in a single action will benefit the judicial system, additional notice will not necessarily guarantee that the judicial system will receive this benefit.

Third, this Court, and the parties currently before this Court, have an interest in efficient resolution of this controversy. A further extension of the notice period may cause delays that undercut the efficiencies that can be achieved through additional notice.

Fourth, absent class members have an interest in taking advantage of the cost saving aspects of a collective action. These absent class members, however, have failed to provide accurate mail forwarding information and have therefore not protected this interest. Additionally, the failure to receive notice does not prejudice absent class members to the same extent as in a Rule 23(b)(3) class. In a Rule 23(b)(3) class, a judgment binds absent class members unless they affirmatively opt out, which they cannot do unless they receive notice. Here, absent class members will not be a party to this litigation unless they affirmatively opt in. Absent class members can still pursue their claims individually outside this collective action.

Fifth, absent class members additionally have a strong interest in the privacy of their social security numbers. Assuming that the opt-in rate continues, around 147 individuals that have no interest in this litigation will have their social security numbers turned over to Plaintiff or to a third party. Despite the protections that a confidentiality order can provide, this is an intrusion on

Case No. 1:08-cv-2791
Gwin, J.

important privacy interests of individuals that are, at this point, just members of the public and not connected to this action.  *See* 29 U.S.C. § 216(b); *Hoffman-La Roche*, 493 U.S. at 177-78 (Scalia, J., dissenting).

After weighing these various interests, this Court holds that the costs associated with compelled production of absent class members' social security numbers outweigh the benefits.

### IV.  Conclusion

For the reasons stated above, this Court **DENIES** the Plaintiff's motion.

IT IS SO ORDERED.


Dated: April 15, 2009                                     s/         *James S. Gwin*
                                                                           JAMES S. GWIN
                                                                           UNITED   STATES   DISTRICT   JUDGE